WESTERN UNION TELEGRAPH CO. v. BERTRAM & MUELLER.

(No. 1990, Op. Book No. 2, p. 426.)

APPEAL from Travis County.    Opnion by WATTS, J.

§ 1152. *Telegraph companies; rules in relation to liability of, in sending and delivering messages; measure of damage for breach of contract by; burden of proof.* In the transmission and delivery of messages, telegraph companies must, from the nature of the business in which they are engaged, and their relations to the general public, be held to a strict rule of diligence. They accept benefits and franchises granted by law, including the extraordinary right of eminent domain. The consideration that induces the public to confer these rights and franchises is, that it may thereby be furnished with a safe and speedy means for the prompt transmission of information between places remote from each other. And as these corporations are on the one hand created for the accommodation and convenience of the public, and on the other, organized and put in operation for the mutual profit of the members, the law assigns them a kind of dual position. In their relations to and with the public, they are deemed a kind of public institution, and in respect to their internal affairs, that is, among their members, they are deemed strictly private. The law recognizes this two-fold character of these corporations, and regulates and determines rights accordingly. The almost instantaneous transmission of ideas to the greatest distance, by means of a peculiar application of electricity to a wire, whereby certain sounds are made to represent letters, which are to be formed into messages, expressing with precision the ideas intended to be conveyed, requires great skill and unceasing care. Often the most important matters, financial and otherwise, are dependent upon the correct transmission, reading and rendering of these signals or sounds, so that the exact idea intended shall be communicated to the party to

whom the message is sent.   The duties assumed by these
companies in this respect are truly delicate, difficult and
important.   As a consideration for assuming them, the
public grants to them corporate existence with its attend-
ing rights and benefits.   Besides, as a condition precedent
to the assumption of responsibility, they are authorized
to demand and receive full compensation to be fixed by
themselves for the service to be rendered.   Such being
the case, they should, upon principle, be held to the
greatest care in the selection of the instruments to be
used, and the agents to operate them, and a failure in
this regard will render the company liable to any person
injured by reason thereof.   It is a well known fact, how-
ever, in the science of telegraphy, that owing to electric
currents, and the presence of unusual quantities of elec-
tricity occasionally found along the line, although a mes-
sage may be forwarded, or rather started, with the most
exact precision, it may be entirely interrupted, or the
sounds or signals so changed, that a different message is
received from that which was sent.   Therefore it would
be unreasonable to require these corporations to insure
against causes which no amount of foresight or caution
upon their part could overcome.   But as they possess
peculiar facilities for establishing the existence of these
interposing and disturbing causes, the burden is upon
them to do so, when they seek to excuse upon that ac-
count.   It is now the general and accepted rule that
where it is shown that the message was received by the
company, and not delivered, or delivered in a materially
altered or changed condition, a *prima facie* case of neg-
ligence is made against the company, and the burden is
upon it to show that the failure was the result of these
unavoidable causes.

   This case is an action for damages for failure on the
part of appellant to deliver to A. Thompson & Co., of
New Orleans, the following dispatch, sent by appellees,
viz.: "Austin, November 13, 1879.   A. Thompson &
Co., New Orleans:   Cancel order given Maillet yesterday.

Bertram & Mueller." The order referred to in the dispatch was for ninety-five barrels of sugar, which appellees had ordered shipped to them by Thompson & Co., through their agent Maillet, at Austin, at a stipulated price. Appellees alleged that after they had given Maillet this order, they ascertained that they could purchase the same quality of sugar for a much less price, and therefore desired to cancel said order, and to effect that object sent the dispatch on the next day after the order was given. That said dispatch was not delivered to Thompson & Co., and therefore the order was not canceled, but the sugar was forwarded to them on the same, and they were compelled to receive and pay for it according to their contract, whereby they were damaged the difference between the price they paid for said sugar, and the price they could have bought the same quality of sugar at, had the dispatch been delivered to Thompson & Co., which difference was alleged to be $271.88, and for which appellees recovered judgment. Upon the subject of the measure of damages, the court says: In the case of Griffin v. Calver, 16 N. Y. 489, Selden, J., treating of the measure of damages, said: "The party injured is entitled to recover all his damages, including gains prevented as well as losses sustained." Chief Justice Earl, in the case of Leonard v. N. Y. Tel. Co. 41 N. Y. 544, considering the same subject, said: "It is not required that the parties must have contemplated the actual damages which are to be allowed, but the damages must be such as the parties may fairly be supposed to have contemplated when they made the contract. Parties entering into contracts usually contemplate that they will be performed, and not that they will be violated. They very rarely actually contemplate any damage which would flow from any breach, and very frequently have not sufficient information to know what such damage would be. As both parties are usually equally bound to know and be informed of the facts pertaining to the execution or breach of a contract which they have entered

into, I think a more precise statement of this rule is that a party is liable for all the direct damages which both parties to the contract would have contemplated as flowing from its breach, if, at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts." We are of opinion that the rule thus stated by Chief Justice Earl is the law that should be applied in cases where damages are claimed on account of a breach of contract. And it was held that the damages claimed by the plaintiff in this case come within the rule, and were proper damages to be allowed.

§ 1153. *Evidence; private papers; bill of lading.* On the trial appellees read in evidence, over the objections of appellant, the bill of lading of the sugar shipped to them by Thompson & Co. *Held*, there is no evidence outside the bill of lading found in the record that tends to show that the sugar was not shipped on the day before appellees delivered the message to the Austin operator. This was a material fact, and the burden was upon appellees to show that if the message had been promptly delivered to A. Thompson & Co., it would have reached them before the sugar was shipped. Stating the proposition in a different form, the burden was upon appellees to show an injury resulting from the non-delivery of the message to entitle them to recover in this action. And it is certainly true that if the sugar was *in transitu* before the message countermanding the order was delivered to the Austin operator, no injury could have resulted in the particular matter asserted in the petition. Evidence to establish this fact was necessary, and while the bill of lading might not furnish very convincing evidence that the sugar was shipped after the time the message should have been delivered, it does tend to show that fact, and constitutes the only evidence in the record with respect to that matter. Therefore, if the same was improperly admitted, it would be a material error, and such as would likely work an injury to appellant. The bill of lading

and accompanying letter did not, in whole or in part, form the basis of any pleading in the case; they were private writings to which appellant was an entire stranger. It is elementary law that private writings which do not constitute in whole or in part the basis of the pleading are not admissible in evidence without first proving their execution. A bill of lading occupies in this respect the same position as any other private instrument, and if the same purports to be signed by a clerk or servant, the agency of such clerk or servant must also be proved. [Abbott's Tr. Ev. p. 564; Renn v. Samos, 33 Tex. 760.] The admission of this evidence constituted such error as must reverse the judgment.

§ **1154.** *Burden of proof; what plaintiff must establish in action like this to entitle him to recover.* To entitle appellees to recover in this case the burden is upon them to establish the three following propositions: 1st. That the appellant undertook to transmit and deliver the message. 2d. That it failed to transmit and deliver the same as agreed. 3d. That appellees were damaged by reason of the failure. [Abbott's Tr. Ev. p. 604.]

§ **1155.** *Judgment not supported by evidence.* The finding of the court upon the evidence is entitled to the same consideration as would be given to the verdict of a jury. This rule has regard in its application to the credibility of witnesses, and the weight to be given to their testimony. But where there is not sufficient evidence, giving to it full weight, it is then not a question of preponderance, but of insufficiency of evidence, and the judgment will be set aside.

June 22, 1881.                Reversed and remanded.