**Mathew CULMORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42451.**

Court of Criminal Appeals of Texas.

Nov. 19, 1969.

Horace G. Goodrich, Emmett Colvin, Jr., Dallas (on appeal), for appellant.

Henry Wade, Dist. Atty., Dallas, John Tolle, James P. Finstrom, and Camille Elliott, Asst. Dist. Attys., Dallas, and Jim Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is possession of marijuana; the punishment, sixteen years imprisonment.

We are met at the outset with appellant's serious contention that the evidence is insufficient to support the conviction. These are the facts viewed in the light most favorable to the State. Officers, armed with a search warrant, approached the home of one Claude Bell. After knocking, but without announcing their identity or purpose, the officers entered the home and discovered four men and a woman seated in the "den." There was no testimony from any of the officers that any person in the house attempted to flee, was seen or heard moving about, or observed making any suspicious movements. Each was searched and nothing incriminating was found. They then proceeded into the bedroom where they found a quantity of marijuana and pipe in which some "used" marijuana was found. The only probative fact which implicated appellant was that the officers detected the odor of marijuana in both the "den" and in the bedroom. None of the officers testified that in their opinion any of the five appeared to be under the influence of marijuana at that time or later. The State lays much stress on the fact that they found a packet of cigarette papers in appellant's pocket which were returned to the appellant after the search. This can have no probative effect in the case at bar as no marijuana cigarette "butts" were found in the "den" or anywhere in the house. However, there were regular tobacco butts found in the ash tray in the den. All of the marijuana and other items introduced into evidence were found in the bedroom occupied by Claude Bell in his parents' home. Said bedroom was across and down the hall from the "den," the distance between the rooms did not appear in

the record. There was no showing that appellant had ever been in the bedroom, and it is noted that among the items found there were no cigarette papers. A search of John Rock's automobile, with his consent, revealed no marijuana or other contraband. If marijuana had been smoked prior to the officer's entry, it had been smoked in the pipe which was found in the bedroom.

This is the State's case. Appellant testified that he was seventeen years old at the time charged and had no prior felony convictions. He stated that he had seen Bell, whom he did not know too well, at a shopping center earlier in the day; that Bell had invited him and John Young, who was present, to come by the Bell's house that evening; that they had no transportation and did not decide to go until John Rock unexpectedly came by in his car; that they had arrived at the Bell's home in Rock's car some 30 to 45 minutes before the officers; that they were admitted into the house by the 17 year old girl; that he never left the "den" after his arrival; that they were all watching television when the officers suddenly walked into the room; that he had no knowledge there was marijuana in the house; that he did not detect any odor because of an allergy which affected his olfactory capacity. He stated that he smoked ready made cigarettes and had a package with him at the time.

This being a circumstantial evidence case, attention is called to the following from 24 Tex.Jur.2d, Evidence, Section 742, p. 422:

> "In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged."

Though not relied upon by the State, the nearest case is the majority's opinion in Hunt v. State, 158 Tex.Cr.R. 618, 258 S.W. 2d 320. The obvious distinction is that in Hunt the accused was seen making motions in the immediate area where the contraband was later found. Here appellant was never shown to have entered the bedroom, across the hall from the "den," where the marijuana and the pipe were found.

The next case in point is Martinez v. State, 170 Tex.Cr.R. 266, 340 S.W.2d 56, where the marijuana cigarette upon which the prosecution was based was found across the street from Gonzales' automobile and Martinez was not shown to have had any prior connection with Gonzales. In that case even though there was a plea of *nolo contendre* this Court found the evidence insufficient to support the plea.

We then move to Arsiaga v. State, Tex. Cr.App., 372 S.W.2d 538, where the court expressed serious doubt as to the sufficiency of the evidence in a case where the accused was shown to be in a position to have come in contact with the contraband, but the State was unable to show that he had ever had the same in his control and custody.

In Brown v. State, Tex.Cr.App., 437 S.W. 2d 828, we had occasion to distinguish Arsiaga v. State, supra, and Martinez v. State, supra, and Brock v. State, infra. The facts in Brown are clearly different and more incriminating than those before us here.

In Brock v. State, 162 Tex.Cr.R. 339, 285 S.W.2d 745, the general rule in cases such as the one at bar is accurately stated as follows:

> "A conviction on circumstantial evidence cannot be sustained if the circumstances proven do not exclude every other reasonable hypothesis except that of the guilt of the accused; and proof amounting only to a strong suspicion or mere probability is insufficient."

Attention is also directed to Glenn v. United States, 6 Cir., 271 F.2d 880, where the Court said:

"The mere presence of the accused at the scene of a crime does not, of itself, justify drawing an inference that he participated therein." [1]

█ A conviction on circumstantial evidence cannot be sustained on proof amounting only to a strong suspicion or mere probability. Such proof does not exclude every other reasonable hypothesis except that of the guilt of the accused.

█ It therefore follows from what we have said that the evidence is insufficient to support the conviction and the judgment must be reversed and the cause be remanded.

DOUGLAS, Judge (concurring).

Considering the evidence produced at the guilt stage of the trial in the light most favorable to the State, I concur in the result that the evidence is insufficient to support the conviction.

WOODLEY, Presiding Judge (dissenting).

The opinion reversing this conviction reaches the conclusion that the evidence is insufficient but fails to set out the evidence from the standpoint most favorable to the jury's verdict. Instead, the opinion sets out testimony of appellant which the jury was not bound to accept as true.

It is a fundamental rule in criminal cases that testimony introduced by the defendant may be used against him. Spears v. State, 103 Tex.Cr.R. 474, 281 S.W. 555.

It is equally well settled that the jury is not bound to accept all or any part of the defendant's testimony as true.

We are not here confronted with a case where the state was bound to prove beyond a reasonable doubt that the defendant had exclusive possession and control of a narcotic drug.

The record reflects that this is a companion case to those of C. D. Bell III, J. P. Rock and J. S. Young, Jr.[1]

In his charge, to which there were no objections, the court defined "possession" and instructed the jury that ownership was not necessary to constitute possession, and that more than one person may have possession of a thing at the same time.

The court also charged the jury on the law of principals and submitted the case to the jury as one depending for conviction on circumstantial evidence.

Two rooms of the house were lighted; the bedroom where the marijuana was found and the den where appellant, his co-indictees and a 17 year old girl were sitting when two of the officers executing the search warrant entered the front door.[2]

The evidence relating to the marijuana found in the bedroom is shown by the fol-

1. See also United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Araujo-Lopez v. United States, 9 Cir., 405 F.2d 466; Vasquez v. State, 145 Tex.Cr.R. 376, 167 S.W.2d 1030; Massey v. State, 154 Tex.Cr.R. 263, 226 S.W.2d 856; Williamson v. State, 156 Tex.Cr.R. 520, 244 S.W.2d 202; Moore v. State, 158 Tex.Cr.R. 234, 254 S.W.2d 520.

1. Also, on motion of the state appellant and his counsel were instructed by the court to refrain from referring or allud-

ing to, in the presence of the jury or jury panel, "the amount of punishment received by any of the defendants, Claude Bell III, John Paul Rock and John Simmons Young, Jr."

2. It is not shown how much time elapsed between the time the officers knocked and the time they first saw the persons sitting in the den. Appellant testified they had all been in the den for about an hour, during which time none of them went into the bedroom.

lowing testimony of Dallas Police Officer Sam C. Gonsales:

"I found on top of this desk that I pointed out in the bedroom a flour sifter that had traces of marijuana in it. This is the instrument they used to strain their manicured marijuana; also in the second drawer on the left-hand side of this desk I found a small baggie with approximately 100 grains of marijuana and seeds that was rough marijuana."

To connect appellant with the possession of the bags of marijuana, in addition to his presence in the den with all the other persons who were in the house, are the following facts and circumstances.

Officer Gonsales testified "there was *a real strong* smell of marijuana smoke when we entered the house. * * * First we searched the people in the den * * *.

"Q. * * * What is State's Exhibit No. 7?

"A. It's a package of cigarette papers.

"Q. That's normally used to do what?

"A. Roll cigarettes. Most of the places where we find marijuana, this is the most common brand of cigarette papers found.

"Q. You're telling them you found them in the left shirt pocket of that Defendant, is that correct?

"A. Yes, sir.

　　*　　*　　*　　*　　*　　*

"Q. Did you see ashtrays in there in the bedroom?

"A. Yes, sir.

"Q. Were they clean?

"A. *They were wiped clean."*

It is interesting to note that no tobacco from which cigarettes could be rolled was found in the house and according to the officers' testimony the only cigarette papers available to roll marijuana cigarettes were those found in appellant's shirt pocket.

Any hypothesis that these cigarette papers were for use in rolling tobacco cigarettes was removed by appellant's testimony that he did not and had never "rolled his own" but at the time smoked ready rolled cigarettes, a package of which were in his pocket.

Officer Tarver testified that when he and Officer Gonsales went in the front door he immediately noticed a *strong odor* of marijuana, and that such odor *was strong* in the den and in the bedroom where he found a pipe as well as a plastic bag containing what he believed to be marijuana on top of the desk.

Officer Tarver further testified that he saw Officer Gonsales search appellant in the den and take a package of cigarette papers out of appellant's pocket.

If appellant's testimony is true, he was guilty of no offense. In his testimony he gave no explanation of his possession of the package of cigarette papers taken from his shirt pocket and introduced in evidence. His testimony was that he had no cigarette papers, that he was not searched; had never seen the cigarette papers introduced in evidence as those taken from his shirt pocket until produced at the trial; he had not been in the bedroom; he did not know Claude Bell "had all of this stuff in his house—didn't know Claude Bell that well;" had never seen the package of marijuana, the sifter or the pipe until the officers brought them into the den; that all of the five people in the house remained in the den from about 9 o'clock until the officers arrived about 10 o'clock and none of them went to the bedroom during the time he was in the house, that he had never before or since seen marijuana except in an F.B.I. exhibit, and that he did not smell the odor of marijuana smoke described by the state's witnesses and could not smell anything because of an allergy.

Without regard to the fact that much of appellant's testimony was directly contrary to the testimony of the state's witnesses and the impeachment testimony offered by

the state in rebuttal,[3] the jury was not bound to accept this testimony of appellant as true, and it is evident that they did not.

The majority opinion holds that the only probative fact which implicates appellant was the odor of marijuana in both the den and the bedroom. The fact that cigarette papers were found in appellant's pocket is denied any probative effect because no marijuana cigarette butts were found in the house. Disregarded is the testimony of appellant that he had no cigarette papers and the testimony of Officer Gonsales that the ashtray in the bedroom where the marijuana prepared for smoking was lying on top of the desk "had been wiped clean."

The question is not whether the evidence is sufficient to support a finding by the jury that appellant alone possessed the marijuana found in the bedroom.

Exclusive possession of such marijuana in appellant is not shown by the evidence.

The question is whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient to support a finding by the jury beyond a reasonable doubt that appellant participated in the unlawful possession of said marijuana. See 24 Tex.Jur.2d 393, Evidence—Sec. 724, and cases cited under Note 6.

In Parker v. State, Tex.Cr.App., 432 S.W.2d 526, we quoted from Mason v. State, 108 Tex.Cr.R. 452, 1 S.W.2d 283, as follows:

" 'Very wisely the jury has been made the exclusive judges of the facts proven and the weight to be given to the testimony * * * this court does not, and should not, assume to exercise the right to reverse on the facts, unless the evidence, when viewed in its strongest light from the standpoint of the state, fails to make guilt reasonably certain. * * *.'

"While this court has the right to reverse a judgment of conviction on account of the insufficiency of the evidence (Texas Code Crim.Procedure, art. 939) and it becomes its duty to do so 'if the guilt of the accused is not made to appear with reasonable certainty' (Mitchell v. State, 33 Tex.Cr.R. 575, 28 S.W. 475), no fixed rule has been devised which will in all cases furnish a certain standard. Necessarily each case must in a measure be tested by its own facts (Mitchell v. State, * * *; Hampton v. State, 1 Tex. App. 652; Burrill on Circumstantial Evidence, p. 737; Wills on Circumstantial Evidence, p. 188). However, when a jury, advised of the restrictions which the law places upon them in condemning one on circumstantial evidence, reaches the conclusion upon evidence properly before them that the accused is guilty, it is not for the reviewing court to supplant their findings by its own unless it is able to point to weaknesses, omissions, or inconsistencies in the evidence which destroy

3. Police Officer Cole testified that in front of a certain apartment house on November 3, 1967, a man named Keen handed him a hand rolled cigarette which was burning and emitting the odor of burning marijuana and that at such time appellant was standing "perhaps two feet away" and saw Keen hand him the cigarette. Shortly thereafter, in one of the apartments, one Chuck Deal came from the bedroom area and placed two bags of vegetable matter resembling marijuana on the table. One Eric Lingo picked up both bags, placed one in his pocket and gave the other to the witness Cole. Appellant and one Mark Craft were present when this exchange of marijuana occurred.

Directing his remark to appellant, Craft said something like "heard a guy gave you a pound?" to which appellant replied "he did, the guy has a closet full but doesn't have any speed or acid * * *." and went on to say he would "trade a pound of weed for three grams of speed or two good tabs of acid." (The witness testified that in the vernacular of those engaged in narcotics traffic, the term "weed" designates marijuana; "speed" is methamphetamine, a stimulate-type drug, and "acid" is Lysergic Acid Diethylamide, commonly referred to as LSD.)

its cogency. This, in the instant case, we are unable to do. (Quote from Taylor v. State, 87 Tex.Cr.R. 330, 221 S.W. 611, at pages 613 and 614.)"

I would hold that the evidence is sufficient to sustain the jury's verdict.