**George CARLSEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63987.**

Court of Criminal Appeals of Texas, En Banc.

March 1, 1983.

Rehearing Denied July 20, 1983.

Norman Arnett, Rotan, for appellant.

Frank Ginzel, Dist. Atty., and Russell L. Carroll, Asst. Dist. Atty., Colorado City, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal from a conviction for theft of cattle. Punishment was assessed at ten years' confinement and a $1,000 fine. Appellant in his sole ground of error challenges the sufficiency of the evidence. We reverse and order a judgment of acquittal be entered in this cause.

The State introduced six witnesses in its case-in-chief. Gerald Kent testified that he owned, or leased, a small ranching and farming operation in Fisher County. He owned over one hundred unbranded cows and calves including the "popular" black bald-faced or motley-faced calves produced by crossing the Hereford and Angus breeds. In October of 1978, he hired appellant, who to his knowledge was not engaged in the cattle business, to feed his cattle when he was unable to drive out to his ranch because of bad weather or poor health. Kent gave appellant one of the three keys to the locked pastures. Kent continued visiting the ranch and personally feeding the cattle at least every three days throughout the winter.

Some five months after hiring appellant, on Friday, March 23, 1979, Kent received a phone call from appellant who stated that it had rained heavily at the ranch and that Kent should stay at home and let appellant feed the cattle. Kent agreed and did not go to the ranch until the next Monday when

he, his wife and his foreman, G.W. (Slim) Hankins, drove out to feed the cattle. He testified that he became suspicious when he noted that it had apparently not rained and that there had been some unusual activity around the east corrals: the outside gate to one of the corrals had been opened, hay had been fed inside the corral, the ground was disturbed by fairly fresh animal tracks and his stock trailer contained cattle waste and had been moved from the south pasture to the east corrals. The next Tuesday, March 27, 1979, he and his foreman rounded up and counted the cows and discovered some 15 cows and calves were missing.

About 10 days later, Kent identified two of his missing calves at a ranch owned by Sam McGee near Electra. The calves were located in a pasture with approximately 300 other calves of a similar breed. He described the calves as "a black motley-faced steer calf" and "a black motley-faced bull calf." He had given no one permission to remove or sell any of his cattle.

Foreman G.W. (Slim) Hankins testified that he worked for Kent, had a key to the pastures and had never given the key to anyone else.[1] He was with Kent on the Monday when the unusual activity around the corrals was discovered, although he did not notice any unusual tracks. He also testified that he, along with Kent, had immediately identified the two calves on Sam McGee's ranch as ones missing from Kent's ranch. He described the calves as one "black bald-faced calf" and one "black motley-faced calf."

Farmer James Ross testified that on Friday, March 16, 1979, he sold appellant a stock trailer, pictures of which were introduced into evidence.

Tommy Clay, foreman for Haskell Livestock Auction, identified appellant as the man who brought four calves to the auction on Saturday, March 17, 1979. Clay identified the stock trailer sold to appellant by Ross as the trailer appellant used on that Saturday. Clay testified that appellant told him all four animals were bulls when, in fact, one was a heifer. It was Clay's opinion that appellant did not know much about cattle.

Clay's job included assigning each animal a number beginning with zero according to the animal's arrival at the weekly auction. Appellant's cattle were numbered 1142, 1143, 1144, and 1145. Clay identified a consignment sheet on which he had written descriptions of the calves. Calf 1143 was described as a "black motley-faced bull." Calf 1145 was described as a "black white-faced bull." Clay further testified that the descriptions, as written, would not be sufficient to distinguish the calves from others of the same "popular," "common" breed. He also stated he could not now identify the calves. Calves 1143 and 1145 were sold to Sam McGee of Electra.

Gertrude Hopkins, a bookkeeper for the Haskell Livestock Auction, identified two checks made out to appellant as his proceeds from the sale of the calves and four scale tickets, one on each calf sold on March 17th. The scale tickets show that calf 1143, a black motley-faced bull, and calf 1145, a black white-faced steer, were sold to McGee.

The last State's witness, Roy L. Montgomery, identified appellant as the man he

---

1. A considerable amount of testimony was concerned with the accessibility of the east corrals to non-key holders. Kent had earlier testified that it was possible someone could take down a wire fence and enter the property. He also mentioned a "little place" close to appellant's home which was not locked. Additionally, Hankins testified that a "gyp quarry" was located on Kent's property about one-quarter of a mile from the pens. The gyp miners entered through an unlocked gate and drove across the property to the quarry. How likely it would be for someone to get from the gyp miners' road to the east corrals without a key and then steal some of the calves is unclear from the testimony. Frequent references were made to black board drawings (which are not part of the record) showing the locations of the pastures, fields and fences. Descriptive references such as "they come in somewhere down here and come across the field and then in this way" do not assist us. Suffice it to say that both Hankins and Kent testified that although it would have been difficult it was possible that non-key holders could have had some access to the corrals.

had sold a horse to at the Haskell Livestock Auction on March 17, 1979.

■ The case was submitted to the jury with an instruction on circumstantial evidence. A conviction based on circumstantial evidence must exclude every other reasonable hypothesis except the guilt of the accused. *Moore v. State,* 640 S.W.2d 300 (Tex.Cr.App.1982); *Autry v. State,* 626 S.W.2d 758 (Tex.Cr.App.1982); *Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981); *Schershel v. State,* 575 S.W.2d 548 (Tex.Cr. App.1979); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977). It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis is a reasonable one consistent with the circumstances and the facts proved. *Moore,* supra; *Autry,* supra; *Swink,* supra; *Flores,* supra. Each fact need not point directly and independently to the guilt of the accused, as the cumulative effect of all the incriminating facts may be sufficient to support the evidence. *Stogsdill,* supra; *Flores,* supra; *Swink,* supra. However, proof which amounts only to a strong suspicion or mere probability is insufficient. *Moore,* supra; *Autry,* supra; *Schershel,* supra; *Stogsdill,* supra.

■ Ordinarily we would examine the evidence in the light most favorable to the verdict. However, in reviewing a circumstantial evidence conviction we do not use that standard, and any language in prior cases to the contrary is hereby expressly disavowed. Instead, as we stated in *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App. 1969):

"In ascertaining whether the guilt of the accused has been established to a moral certainty, [we] will review the evidence in light of the presumption that the accused is innocent. [We] will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not

sufficiently establish all material elements of the offense charged."

*Id.* at 916. In determining whether incriminating circumstances are sufficient, each case must be tested by its own facts. *Flores,* supra.

■ Summarizing the evidence, we find: (1) in October, Kent hired the appellant, who was not in the cattle business; (2) on Friday, March 16th, appellant bought a stock trailer; (3) on Saturday, March 17th, appellant sold four calves at the Haskell Livestock Auction; (4) two of the calves were sold to Sam McGee, of Electra; (5) on Friday, March 23, appellant called Kent and told him it was raining and that he would feed the cattle; (6) on Monday, March 26th, Kent and Hankins went to the ranch and, after noticing that it had not rained and that some unusual activity had occurred around the east corrals, concluded that some of Kent's cows had been stolen; (7) on Tuesday, March 27th, Kent verified that several cows and calves were missing; and (8) some 10 days later, Kent located two of his missing calves in a herd of around 300 similar animals on Sam McGee's ranch. The evidence also showed that appellant had easy access to the corrals and the calves, although not exclusive access.

While the evidence adduced at trial may certainly raise a strong suspicion of appellant's guilt, this is not sufficient for conviction beyond a reasonable doubt. The record is devoid of any evidence to show that the appellant stole any of Kent's cattle. Specifically, there was no evidence to show that the cattle sold at the auction by appellant were stolen from Kent's ranch. The auction foreman could not identify the particular calves as Kent's. The business records contained only a general description that could apply to any number of calves of the same breed and age. More importantly, there is no probative evidence to show that the calves identified by Kent at McGee's ranch were the same animals sold by appellant at the Haskell Livestock Auction.

The only testimony in the record showing that the calves Kent and Hankins identified were the same calves sold by appellant at

the auction was given by Foreman Hankins: "Both of us said about the same time, 'There's one of calves [sic] right there.' And then this fellow, McGee said, 'That's one of the calves I bought at Haskell.'" That statement does not prove that the calf was bought *from the appellant.* Furthermore, hearsay evidence, even admitted without objection, constitutes *no* evidence, is without probative force, and cannot be used in determining the sufficiency of the evidence. *Alexander v. State,* 587 S.W.2d 729 (Tex.Cr.App.1979); *Ayers v. State,* 570 S.W.2d 926 (Tex.Cr.App.1978); *Cooper v. State,* 527 S.W.2d 563 (Tex.Cr.App.1975); *Lumpkin v. State,* 524 S.W.2d 302 (Tex.Cr. App.1975).

McGee was surely in a position to identify the two calves found on his ranch as the same two calves bought by him at the Haskell Livestock Auction. However, McGee was not called as a witness nor was his absence accounted for.[2] As we have stated before:

"Where the circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

*Ysasaga v. State,* 444 S.W.2d 305, 309 (Tex. Cr.App.1969).

From the facts in the record, we find the circumstantial evidence insufficient to exclude every reasonable hypothesis except the guilt of the appellant.

For these reasons, the judgment is reversed and the cause is reformed to show an acquittal. *Burks v. U.S.,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

2. According to appellant's brief, McGee was subpoenaed by the State, was at the trial, but

ODOM, TOM A. DAVIS, W.C. DAVIS, CAMPBELL and McCORMICK, JJ., concur in result.

### OPINION ON STATE'S MOTIONS FOR REHEARING

CLINTON, Judge.

Leave to file motion for rehearing was granted the State in these causes and they were consolidated in order for us to determine whether the "standard for appellate review" is the same for circumstantial evidence cases and direct evidence cases.

■ The question of sufficiency of evidence to sustain a state criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1974), "announced ... the constitutional minimum required to enforce the due process right" to be free from conviction except on proof beyond a reasonable doubt. The Court then reasoned:

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S. [276,] at 282 [, 87 S.Ct. 483, at 486, 17 L.Ed.2d 362]. Instead, *the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana,* 406 U.S. [356,] at 362 [, 92 S.Ct. 1620, at 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and

was not called as a witness. The State did not contradict appellant's claim.

to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law. [Footnotes omitted and emphasis added.]"

443 U.S. at 318–319, 99 S.Ct. at 2788–2789.

Although *Jackson* was setting a standard for review of state convictions by federal courts, the due process requirements that it announced were based expressly on the Fourteenth Amendment. They are binding on the states and constitute a minimum standard for our sustaining a conviction. "Under *[In re] Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),] which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction [that was obtained even when no rational trier of fact could have found guilt beyond a reasonable doubt] occurs in a state trial, it cannot constitutionally stand." 443 U.S. at 317–318, 99 S.Ct. at 2788–2789. "[S]tate appellate review undoubtedly will serve in the vast majority of cases to vindicate the due process protection that follows from *Winship* ...." 443 U.S. at 322, 99 S.Ct. at 2791.

■ It follows that circumstantial evidence should not be tested by an *ultimate* "standard for review" different from direct evidence; the standard in both kinds of cases is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Accord *Griffin v. State,* 614 S.W.2d 155 (Tex. Cr.App.1981).

■ Still, we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian "exclusion of outstanding reasonable hypotheses" analysis for *applying* the above "standard for review" in circumstantial evidence cases. By the nature of circumstantial evidence, in order to determine it rationally establishes guilt beyond a reasonable doubt, a process of elimination must be used. Illustrative is *Taylor v. State,* 653 S.W.2d 295 (Tex.Cr. App.1983). We there cited the *Jackson* "standard for review;" in actually assessing the evidence, no method *other than* a process of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established Taylor's guilt beyond a reasonable doubt. See also *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982). Stated in the converse, if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding.

Moreover, scrutiny of the analysis suggested in the motions for rehearing (that the focus of our inquiry should be on "any evidence which could rationally support the verdict") reveals it to be functionally indistinguishable from that specifically rejected by the Supreme Court in *Jackson,* supra, as violative of the Fourteenth Amendment.

Finally, as the motions for rehearing persuasively argue, this Court's opinions have never held the circumstantial evidence *analysis* constitutes a different *standard for review* from that to be ultimately applied in direct evidence cases.* If the State's evi-

* It is true that some opinions of the Court have quoted language apparently originating from the pen of an author or editor of *Texas Jurisprudence* to the effect that in circumstantial evidence cases an appellate court will "review the evidence in light of the *presumption that the accused is innocent,*" 18 Tex.Jur. § 309, p. 432.

Literally and technically inaccurate, the statement is revealed as a writer's attempt to convey the notion that the State's burden of

adducing proof beyond a reasonable doubt is but a conceptual corollary of the presumption of innocence, and a failure to produce that evidentiary quantum operates to absolve the appellant. [See *Hill v. State,* 118 Tex.Cr.R. 73, 38 S.W.2d 787 (1931); *Castro v. State,* 115 Tex.Cr.R. 291, 29 S.W.2d 760 (1930); *Jones v. State,* 11 S.W.2d 798 (Tex.Cr.App.1928) (Opinion on State's Second Motion for Rehearing); *Jackson v. State,* 101 Tex.Cr.R. 169, 274 S.W. 585 (1925); *Mathis v. State,* 100 Tex.Cr.R. 509,

dence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could *rationally* find the accused guilty *beyond a reasonable doubt*—and this is true irrespective of the character of the evidence.

In sum, we are convinced there are no better analytical guidelines for assaying whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in any given conviction had upon circumstantial evidence than those we currently employ.

The State's motions for rehearing are overruled.

ONION, P.J., concurs in result.

MILLER and CAMPBELL, JJ., not participating.

McCORMICK, Judge, concurring.

I agree that the standard for review in any case is *whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* I write to emphasize that application of the "exclusion of outstanding reasonable hypotheses" analysis is, as stated by the majority, one criteria which may be applied in arriving at the answer to the ultimate result, but it should not be considered an element of that ultimate standard. And as the majority emphasizes, the method of analysis does not change this standard of review.

Logic dictates that if there is a "reasonable hypotheses" other than the guilt of the accused, then it cannot be said that the guilt has been shown "beyond a reasonable doubt." In *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1983), we recognized that direct and circumstantial evidence were to be treated with equal dignity. Thus, any effort to weave into the standard of appellate review any exception or difference or special treatment for one type of evidence or the other will fail for lack of logic.

272 S.W. 204 (1925); *Fitts v. State,* 98 Tex. Cr.R. 146, 264 S.W. 1006 (1924); *Wales v. State,* 86 Tex.Cr.R. 183, 217 S.W. 384 (1919); *Wilkie v. State,* 83 Tex.Cr.R. 490, 203 S.W.

Lastly, in applying this standard to the cases before us, the final outcome is the same. Therefore, I concur in the overruling of the States' motions for rehearing in each case.

TOM G. DAVIS, W.C. DAVIS and TEAGUE, JJ., join in this concurrence.

1091 (1918); *Hampton v. State,* 1 Tex.App. 652 (1877), which are cited for the mentioned inaccurate proposition at 24 Tex.Jur.2d, § 742, p. 425, n. 13 (1961).]