Guadalupe BETANCOURT, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–098–CR.

Court of Appeals of Texas,
Corpus Christi.

May 5, 1983.

Rehearing Denied Sept. 1, 1983.

Abel Toscano, Jr., Harlingen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

Appellant was convicted of theft of property of the value of over $10,000.00. The trial court assessed punishment at five years' imprisonment. The indictment upon which appellant's conviction was based charges him with eight separate thefts from the same individual, totalling $15,-600.00. The indictment also charges that the thefts constitute one scheme and continuing course of conduct. Tex.Penal Code Ann. § 31.09 (Vernon 1974).

First, we consider appellant's challenge of the sufficiency of the evidence to sustain his conviction. At all the times alleged in the indictment, the appellant was employed as a claims representative for the Farmers

Insurance Company (Farmers). The appellant's duties with the company included the settlement of claims against the company for losses covered by policies of insurance issued by the company. As a claims representative, the appellant had the authority to issue bank drafts on company funds in payment of settled claims. As part of its internal security system, Farmers routinely sends loss confirmation letters at random to claimants whom its records show have been paid for losses claimed. After two such letters mailed to claimants in the appellant's area were returned along with denials that monies disbursed had been received, Farmers initiated an investigation. That investigation culminated in the indictment upon which appellant's conviction in this cause is based.

The State's theory was that the appellant, in the course of settling claims with certain individuals, wrote several drafts instead of a single lump sum settlement. To each of these claimants, appellant would present the checks, together or separately, along with various forms for his or her signature. In the exchanges, according to the prosecution, appellant would withhold a single draft, representing part of the settlement. Through deception, appellant would obtain the claimant's endorsement or he would forge it. He would then, with the aid of accomplices, convert the drafts to cash.

This is a circumstantial evidence case, and we must review the sufficiency of the evidence with this in mind. The Court of Criminal Appeals has redefined recently the standard which appellate courts in this State are to apply in reviewing the sufficiency of the evidence in circumstantial evidence cases. See *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983); *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983). In reviewing convictions based solely on circumstantial evidence, the Court of Criminal Appeals has now dictated that we are to view the evidence in the light of the presumption that the accused is innocent, rather than in the light most favorable to the verdict. *Carlsen, supra.*

■ This redefinition has not altered other portions of the rules appellate courts use in reviewing the sufficiency of circumstantial evidence. As noted in *Wilson, supra,* and *Carlsen, supra,* an appellate court will sustain the conviction only if the circumstances exclude every reasonable hypothesis except that of the defendant's guilt. *Moore v. State,* 640 S.W.2d 300 (Tex. Cr.App.1982). In addition, an appellate court will not presume any acts against the accused that are not shown to have been committed by him. *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App.1969). Proof amounting only to a strong suspicion is insufficient. *Flanagan v. State,* 620 S.W.2d 591 (Tex.Cr.App.1981).

■ It is not necessary, of course, that every fact proven point directly and independently to the guilt of the defendant so long as the combined force of all the circumstances negates any reasonable hypothesis other than the defendant's guilt. *Jones v. State,* 442 S.W.2d 698 (Tex.Cr.App.1969), cert. denied, 397 U.S. 958, 90 S.Ct. 967, 25 L.Ed.2d 143 (1970). It is this standard, viewing the evidence in the light of the presumption that the defendant is innocent, which we are bound to apply to the facts and circumstances of this case.

Eight claimants testified at appellant's trial. None had any significant formal education, and none was proficient at reading or writing English. Some could not speak English. All testified that the appellant was the individual who handled their claims and from whom they had received partial payments for their losses. Each identified a number of checks which they had received and cashed as part of their settlements. Each identified a check which was made out to him or her or a relative, as payee, and which bore his or her purported signature in the appropriate place for endorsement. With regard to each of these eight checks, each of the witnesses denied having received the amount of money represented by the check, and further denied having knowingly or intentionally endorsed the same. Some denied altogether that the signature was actually theirs. All of the claimants

testified that they met with the appellant one or more times and that, in the course of these meetings, at the request of the appellant, they signed numerous pieces of paper which the appellant assured them was necessary for the settlement of their claims. With one exception, all of the claimants denied ever having been to the bank where the checks in question were cashed.

The checks in question were all cashed at the same bank, the First State Bank & Trust Company of Mission, Texas. Ruben Rivas, an officer at the bank, identified the appellant as someone he had known for at least a year and one-half. He stated that the appellant would bring clients in to cash their settlement checks and that Rivas would authorize the cashing by initialing the checks. At first he would require identification, but later did not do so, trusting the appellant and relying on bank tellers to check identification. Later, the appellant would telephone that he was sending someone over with a check, and Rivas would initial it when the individual presented the draft, saying that appellant had sent him in. Rivas also identified his initials on the drafts which the State alleged as stolen. The only teller who testified stated that, of the checks she cashed, she never required identification because she relied upon the initials of the bank officer. Rivas could identify none of the above-mentioned claimants except one, who is a regular customer at his bank. He testified that none of the claimants were among those who had come to the bank requesting his approval for the cashing of an insurance check. Both Rivas and the cashier denied any involvement in any scheme to steal insurance money.

Philip Jackson, appellant's supervisor at Farmers, testified that he had actual care, custody and control over the company monies, had a greater right to them than appellant, and that he never authorized the appellant to cash checks or write drafts which the claimants never received payment on.

■ Appellant argues that State's Exhibits 1–28, the bank drafts involved in the claim settlements in question, were hearsay and of no probative value against the appellant. Our review of the record reveals that the drafts were properly admitted under the business records exception to the hearsay rule. Tex.Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp.1982). Appellant's trial court objection to the admission of the drafts was based solely on the State's failure to establish beforehand that the appellant had made the drafts. Such fact was not essential to the admission of the drafts as business records. Even if it was, the trial court could properly have admitted the drafts subject to such proof. The appellant's supervisor at Farmers identified the signature of the maker or the maker's representative on the face of the drafts as that of the appellant, and further identified appellant's unique employee number on all the drafts.

■ Appellant also claims that the State failed to prove that the owner named in the indictment, Philip Jackson, was, in fact, the owner of the monies taken. As mentioned above, however, the testimony of Jackson was sufficient to establish him as an owner. The fact that on cross-examination Jackson indicated he did not handle the banking end of the claims process did not lessen the effect of his testimony that he had care, custody and control over company monies and a greater right to them than the appellant. See Tex.Penal Code Ann. § 1.07(a)(24), (28) (Vernon 1974); Compton v. State, 607 S.W.2d 246, 250–51 (Tex.Cr. App.1980) (opinion on State's Motion for Rehearing).

■ Finally, appellant argues that the State's evidence is insufficient because it failed to prove that the appellant actually cashed the checks in question himself or, in fact, received any money therefrom. Appellant was charged with intentionally and knowingly appropriating property without the effective consent of the owner with intent to deprive the owner of the property. One of the definitions of "appropriate" given by the Penal Code is "to acquire or otherwise exercise control over property other than real property." Tex.Penal Code Ann. § 31.01(5)(B) (Vernon Supp.1982).

The evidence shows that the checks in question were written by the appellant and cashed by unknown individuals, other than the owner or the claimants, at the First State Bank & Trust Company of Mission with the approval of the cashier, Ruben Rivas. The only way that those individuals could have obtained the checks was for appellant to give the checks to them. The fact that appellant either personally or by phone requested Rivas' approval to cash the checks precludes the possibility that the checks were stolen from appellant's custody. The evidence is sufficient to show that appellant exercised control over the drafts. The fact that the evidence does not show what happened to the money after the drafts were cashed does not render the evidence insufficient to convict appellant of the theft.

▪ We are convinced from our reading of the entire record that the circumstances shown by the evidence, as summarized above, exclude all other reasonable hypotheses other than that of the appellant's guilt. We conclude the evidence is sufficient in this case. Grounds of error numbers two and four are overruled.

▪ The appellant alleges that his constitutional guarantees to a fair and impartial trial were abridged because the trial judge abused his discretion by "interjecting himself" in the trial and "actively assisting the State" in the trial of the cause. Appellant bases his arguments under this ground upon two incidents at the trial. The first incident was an exchange between the court and appellant's trial counsel which occurred while appellant's counsel was cross-examining one of the State's witnesses. The following occurred:

"BY MR. TOSCANO—

Q: Did you handle personally these checks that we are talking about?

THE COURT: Be specific now. You are talking about all five checks now?

MR. TOSCANO: I am talking about all five checks.

THE COURT: Well, let's be more specific. I am giving you an instruction now.

Q: (By Mr. Toscano.) Did you handle State's Exhibits Numbers 24, 25, 26, 27 and 28?

THE COURT: Clarify that. Don't refer to these items by Exhibits. Let him know which ones you are talking about specifically, what amount and which checks.

MR. TOSCANO: Your Honor, I am going to object to the Court—

THE COURT: I am giving you an instruction, Mr. Toscano. Do not argue with the Court at this time. Let me recess. Take the jury out."

After the jury was retired, a lengthy discussion ensued between the court and appellant's trial counsel, with the court maintaining its position that counsel be specific in his questions regarding the numerous exhibits in evidence so as not to confuse the witnesses.

The record reflects that a total of 28 bank drafts were introduced into evidence, 8 of which were alleged to have been misappropriated by the appellant. The record also reflects that the insurance claimants for whom the money was intended and who were called by the State as witnesses were unsophisticated and lacking in formal education. Many were visibly upset at being before the court and exhibited much apparent confusion at the proceedings. Given the mental and emotional state of the witnesses and the large number of apparently similar documents about which they were to testify, the trial court's admonishment to defense counsel to be specific in his questioning did not amount to an abuse of discretion. Rather, we hold that the trial court's comments, even those in the presence of the jury, were proper and necessary to preserve the orderly administration of the trial. See *Duran v. State,* 505 S.W.2d 863, 865 (Tex.Cr.App.1974); *Meek v. State,* 628 S.W.2d 543, 547 (Tex.App.—Ft. Worth 1982, d.r. ref'd).

▪ The test that a judicial comment in the jury's presence constituted reversible error is whether the remark was such that it is reasonably calculated to ben-

efit the State or to prejudice the defendant's rights. *Marks v. State,* 617 S.W.2d 250, 252 (Tex.Cr.App.1981); *Smith v. State,* 595 S.W.2d 120, 123 (Tex.Cr.App.1980); *Kincade v. State,* 552 S.W.2d 832, 835 (Tex. Cr.App.1977). The "don't argue" remark challenged as prejudicing the jury must be analyzed under this "reasonable calculation test." Such analysis fails to demonstrate calculation to help the State or harm the defendant. The remark appears to be simply an admonishment to defense counsel not to proceed with his objections until the jury was removed.

█ The second instance complained of by the appellant occurred during the State's direct examination of Ruben Rivas, the assistant cashier at the First State Bank & Trust Company of Mission, who authorized the cashing of the checks in question. Outside the presence of the jury, the court suggested that the named payees on the checks who had earlier testified that they had not received such checks should be brought back into court to see if Rivas recognized any of them as individuals who presented checks to him for cashing. It has been held permissible for a trial judge to ask questions to clarify witnesses' testimony. *Munoz v. State,* 485 S.W.2d 782 (Tex. Cr.App.1972); *Silva v. State,* 635 S.W.2d 775 (Tex.App.—Corpus Christi 1982, d.r. ref'd). The appellant cites no authority for the proposition that such action was reversible error. We hold that it was not. This ground of error is overruled.

Appellant contends that the indictment in this cause is fundamentally defective "on the basis that said indictment did not properly inform the appellant of the nature and cause of the accusation against him, in violation of appellant's constitutional rights." No motion to quash was filed in the trial court, and this complaint is made for the first time on appeal.

█ With the exception of the dates and the amounts, each count of the indictment against the appellant is essentially identical with the others. Each accuses that the appellant did intentionally and knowingly appropriate property without the effective consent of the owner, and with intent to deprive said owner of said property. Tex.Penal Code Ann. § 31.03 (Vernon Supp.1982) provides that a person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. The section further states that appropriation of property is unlawful if it is without the owner's effective consent. This indictment which tracks the statute is sufficient to charge the offense of theft. That the indictment fails to allege the constituent elements of the offense is the only defect which may properly be raised for the first time on appeal. *Tucker v. State,* 556 S.W.2d 823, 825 (Tex.Cr.App.1977); *Thornton v. State,* 529 S.W.2d 539, 540 (Tex.Cr. App.1975); *American Plant Food Corp. v. State,* 508 S.W.2d 598, 604 (Tex.Cr.App. 1974). Compare *Reynolds v. State,* 547 S.W.2d 590 (Tex.Cr.App.1977). Ground of error number three is overruled.

Having considered and rejected all of appellant's grounds of error, we affirm the judgment of the trial court.

## ON MOTION FOR REHEARING

In his motion for rehearing, appellant identifies a sentence in our opinion which could be interpreted as an improper presumption against the appellant of acts now shown to have been committed by him. See *Culmore v. State,* 447 S.W.2d 915, 916 (Tex. Cr.App.1969). We withdraw the statement, "The only way that those individuals could have obtained the checks was for appellant to give the checks to them." It was our intent to indicate that the circumstantial evidence against the accused was sufficient for the jury, as a rational trier of fact, to have found the essential elements of the crime beyond a reasonable doubt.

We have considered all of appellant's points of error of the motion for rehearing and they are OVERRULED.