**Gary Paul PARSLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 85 081 CR.**

Court of Appeals of Texas,
Beaumont.

April 23, 1986.

Rehearing Denied May 21, 1986.

Tommy Gunn, Wingate, Carlton & Gunn, Orange, for appellant.

James O. Jenkins, Jr., Asst. Co. Atty., Orange, for appellee.

## OPINION

BROOKSHIRE, Justice.

In District Court No. D–850005, Gary Paul Parsley was indicted for aggravated sexual abuse. This was one of two indictments for aggravated sexual abuse. The indictment alleged penetration of the vagina of the victim on or about October 8, 1984. The indictment contained one enhancement paragraph, being a final conviction in Jefferson County of aggravated robbery on November 21, 1980. The jury found the accused guilty. Upon Appellant's written pleading for the bench to assess punishment, the judge did so after conducting a hearing on punishment. Appellant was sentenced to fifty years confinement and a $10,000.00 fine. This same sentence was given in the other three companion cases.[1] The court ordered the sentences to run concurrently.

The Appellant argues that fundamental error was committed in enhancing the Appellant's punishment herein and in sentencing the Appellant to both a prison term and a fine.

The trial court did not make a formal finding that the enhancement paragraph was true in this case. Aggravated sexual abuse is classified as a felony of the first

---

1. Companion cases to this case are: No. 09–85–082 CR, District Court No. D–850008, aggravated robbery; No. 09–85–083 CR, District Court No. D–850011, aggravated sexual abuse; No. 09–85–084 CR, District Court No. D–850017, aggravated kidnapping; each styled Gary Paul Parsley v. The State of Texas. An opinion on each case is being filed this date. Each of the judgments and sentences below are affirmed.

degree and the sentence assessed by the court was within the punishment range. Without enhancement, this aggravated sexual abuse offense was a first degree felony. The court did not err. Ground one is overruled.

Appellant argues reversible error in that the District Court admitted evidence of "extraneous offenses".[2] The Appellant put the identity of the assailant into issue. Alibi witnesses were proffered on behalf of the defense. Thereafter, in response, the State introduced testimony of two female convenience store clerks. Each identified this Appellant as the person who had previously robbed each of them. Appellant concedes:

"It is well established in Texas that evidence of another crime is admissible to prove identity when identity is an issue...."

In fact, Appellant unequivocally concedes in his brief that the identity of the accused was affirmatively put into issue by alibi witnesses produced by Gary Paul Parsley; but, the Appellant argues that there were no common distinguishing characteristics relating to these offenses, nor did these extraneous offenses demonstrate any common element, nor were they relevant to any issues in the Appellant's case. We disagree.

In the case subjudice, the female victim was robbed, kidnapped, and assaulted in the early morning hours. She was working at a Billups Convenience Store and Service Station located in Bridge City. The victim was behind the counter when the Appellant, whom she saw and definitely identified, entered the store. She said several times that she could observe and recognize the distinguishing features of his face. She had seen him at a distance of about one foot. After the Appellant entered the store, he walked to a cold drink cooler. Then he approached the checkout counter. At that point, the victim looked at the Appellant eye to eye at a distance of about twelve inches. Then Appellant demanded the paper money out of the register and displayed, according to the victim, a twelve-inch all-metal kitchen knife.

Appellant ordered the victim to take out all of the bills; he did not want the silver. He ordered the victim to the backroom. In the backroom he ordered the victim to disrobe. At once, he grabbed the victim by the hair and told her, "Let's go." This version is according to the victim's recounting of the dramatic and, according to her, "brutal events". After driving away—again according to the victim—the Appellant told her of his plan to rape her. Appellant's car was driven by him to a secluded area. He ordered the victim to undress.

Under the threat of the use of the knife and verbal threats and instructions, she got into the back seat of the vehicle. Then

---

**2.** The careful trial judge conducted a hearing (outside the presence of the jury) going into considerable detail from the two witnesses who were the victims of the two certain extraneous offenses. The victims were K.W. and G.J.J. After the court concluded these hearings, it specifically found that the identity question had been placed in issue and, in addition, that the defense of alibi had been raised.

The trial court found that there were sufficient common, distinguishing characteristics to support the admission into evidence before the jury of the extraneous offenses on the issue of identity. The court found that the accused was positively identified as the perpetrator of each of the extraneous offenses by each of the extraneous victim witnesses; that both extraneous offenses involved the robbery of a convenience store, with a single female attendant or clerk; that both offenses occurred at approximately 2 a.m. in the morning or in the early hours of the morning; both extraneous offenses were committed by a single white male identified as the Appellant; both extraneous offenses, according to the trial judge's specific findings, involved an attempted abduction of the female attendant and that one of the occurrences occurred fourteen days prior to the offense on trial, and the other extraneous offenses occurred approximately three months prior to the felony or felonies on trial; both extraneous offenses occurred within fifteen miles of the offense in question, in the same county. One of the offenses, on July 11, 1984, involved the use of a knife as a weapon. Simply put, we find that the trial judge was correct in his findings and rulings. He was in a superior position to observe the witnesses, being victims of the extraneous offenses.

various acts of sex took place. According to the victim, the Appellant kept the knife nearby and ready. He told her, "Don't ───── me off or I'll cut your throat." The victim testified that she performed sexual acts because she was afraid of dying.

The Appellant then drove to a different location and had forced sex with the victim at the separate location. The victim described the Appellant and her assailant as being one and the same person—a man of about five feet five inches, blue eyes, stocky, dark brown medium length hair, with a short forefinger, and some facial hair. The victim testified that she was with her assailant, who was the Appellant, for about an hour. She made a positive identification of the Appellant by looking at mugbook pictures. Later, she made another identification of Appellant in a live lineup. At that time, she immediately identified him in a lineup of five. During the trial, the victim identified the Appellant in the courtroom as the man who committed the assaults upon her, as well as the robbery and the kidnapping.

We have examined the evidence in the two extraneous offenses. We find that they have common elements. Another victim was a female clerk at a convenience store. She was on duty in the early morning hours. She heard the front door buzzer go off. The assailant grabbed her by the hair and then by the arm. He forced her to the register. He told her to open the register. He pushed her down. Then the assailant took most of the bills out of the register. He later slapped her on the head, calling her a bitch, and expressed his desire that she go outside the convenience store. The assailant pushed her toward the door. When this clerk got outside, she began screaming. Her assailant began dragging her toward his car. When she resisted, he repeatedly struck her in the face. The assailant got into a car, being a dark or rusty colored Camaro. This robbery victim definitely identified the Appellant as the man that robbed her on September 24, 1984.

There was a second extraneous offense. There the victim was the female store clerk at a Country Pantry located on State Highway 105 near Vidor. She was on duty in the early hours of the morning of July 11, 1984, stocking shelves. A man came into the store and asked what time it was. The man walked around the store and looked at certain coolers. The female clerk started toward the cash register. As she approached the register, the man came up behind her with a knife. The female clerk felt the knife in her back and heard the man to say, "I want all your money." The register was opened and the man took the money out. The man told the female clerk, "You're going with me." They both started walking toward the front door. The man was behind the female clerk with a knife and with the money. The female clerk was instructed to get into a truck parked outside. When she got outside the door, she started screaming and running into Highway 105. She heard the squeal of tires as a truck left the parking lot. This female clerk (of the Country Pantry) identified the man who robbed her as being the Appellant. She testified that the Appellant wore a moustache on the night of the crime. The other victim, of the other extraneous offense, swore that her assailant wore a moustache.

The "other cases" involved female clerks and convenience stores. They were each alone in the stores. The events took place in the early hours of the morning. In the tried case and in the extraneous cases, money was taken from the store cash register. The victims were either abducted or an attempted abduction took place. Each extraneous affair showed assaultive behavior toward the female clerk. In two cases, a knife was brandished. In each event, the Appellant drove a motor vehicle away from the scene. The various crime scenes are relatively close to each other; all three are located in the west end of Orange County. The dates of the offenses are relatively close in time, being July 11, September 24, and lastly, October 8, 1984.

The Appellant, who made no attempt to hide his facial features or body outlines,

was positively identified by each victim. Each of the three victims swore that the Appellant had facial hair of some sort. We decide that these matters constitute common distinguishing characteristics. We determine that they have probative value on the question of identity as well as scheme, common design, and modus operandi. We hold that these extraneous offenses had probative value to be weighed and considered by the jury in arriving at their verdict as to whether the Appellant committed the several indicted crimes against the victim in the cases subjudice.

■ The extraneous offenses do not have to be identical to and absolutely parallel with the indicted instant case. *Berry v. State*, 588 S.W.2d 932 (Tex.Crim.App.1979); *Owens v. State*, 450 S.W.2d 324 (Tex.Crim.App.1969); *Bryant v. State*, 656 S.W.2d 513 (Tex.App.—Beaumont 1983, disc. rev. ref'd); *Williams v. State*, 653 S.W.2d 517 (Tex.App.—Beaumont 1983, no pet.).

■ The Appellant argues that the evidence is insufficient to find the Appellant guilty of the offenses of aggravated kidnapping, aggravated robbery, and the two assaults—being aggravated sexual assaults. We have reviewed the record. We are admonished to do this in a light most favorable to the verdict of the jury. The jury simply chose to believe the State's evidence and to give credibility to the direct eyewitness testimony given by the victim. Following the modern accepted standards of appellate review, we overrule this ground of error. We find ample evidence and testimony, including documentary evidence of strong probative force to sustain the jury's verdict of guilt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983).

The Appellant brings forth a zealous argument that the trial court erred in not requiring the prosecution to disprove beyond a reasonable doubt certain exculpatory evidence submitted by the State.

■ The Appellant did voluntarily provide for investigation of hair samples from his head and his pubic region. These samples were delivered to the police authorities at the outset of their investigation. The State called a witness, being the director of the Regional Crime Lab. This director testified that the Appellant's pubic hair and head hair were dissimilar from certain unknown hairs found on the clothes of the complaining witness. The Appellant requested a charge on exculpatory evidence to be presented to the jury. The trial court refused. Appellant flatly states and argues that this evidence completely exculpates the Appellant from the charged offense. Appellant cites *Palafox v. State*, 608 S.W.2d 177 (Tex.Crim.App.1979). We squarely hold that the *Palafox* rule does not apply to any inconsistencies or exculpatory facts involving either head hair or pubic hair; we hold the rule is limited to statements or confessions of the accused. The accused has not admitted doing the acts, which constitute the gravamen of the offense, by confession or otherwise. We find no merit in this ground of error.

■ The Appellant's last ground of error complains of excusing a juror subsequent to the jury being selected. A lady juror was called by the court to take her place inside the jury box; she began crying loudly. She said, in substance, "I can't do it. Do you want me to get a doctor's excuse?" The careful trial court took the lady juror and counsel for both the prosecution and defense into his chambers. Then the lady juror indicated that jury service would be detrimental to her health and well-being. She stated that she was not physically able to serve. She said, in substance, "I can't handle this pressure." We think the trial court acted within its prerogative and discretion in excusing this juror. The trial court granted the defense an additional challenge. The court then again offered the panel for additional questioning to the defense. Thereafter, the defense exercised an additional strike.

We think it is obvious that the trial court made its ruling based on a bodily, physical

defect or a nervous defect which rendered the lady juror unfit for service in the case. We do not find error having been committed by the trial judge. *TEX.CODE CRIM. PROC.ANN. art. 35.16(a)(5)* (Vernon Pamph Supp.1966–1985); *Villarreal v. State*, 576 S.W.2d 51 (Tex.Crim.App.1979); *Moore v. State*, 542 S.W.2d 664 (Tex.Crim. App.1976).

■ Furthermore, the Appellant has the burden to show that he was harmed by this action of the trial court. He has not made this showing. Overruling each ground of error, we affirm.

The judgment and sentence below are affirmed.