**Bennie WHITE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 37367.**

Court of Criminal Appeals of Texas.

Dec. 16, 1964.

Rehearing Denied Jan. 27, 1965.

Marvin Foster, Jr., Corpus Christi, for appellant.

Sam L. Jones, Jr., Dist. Atty., Kipling F. Layton and Douglas Tinker, Asst. Dist. Attys., Corpus Christi, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for robbery; the punishment, twenty-five years.

The testimony of Harry Martin and Luther Green reveals that the appellant, Martin, and Green, agreed on Sunday, November 10, to rob a bank; and that after talking about a gun, Green and appellant went to the latter's home, where appellant got the gun and gave it to Green, who then returned to his home. Shortly after 10 A.M., Tuesday, November 12, the three met at Green's house in Corpus Christi. They agreed to rob the Citizens State Bank in Corpus Christi, and then discussed plans to rob the bank. They agreed that Green, accompanied by Martin, would drive a car to the bank; that Green would wait outside in the car while Martin entered the bank with the gun; and that appellant would meet them at a designated place on a certain street in another car. This understanding and plan was carried out.

The teller of the Citizens State Bank testified that about 11:30 or 11:45 A.M., November 12, a negro man appeared at the teller's window, holding a gun in his hand by his side, and in the other hand he held a brown paper sack, level with the counter. He told the teller to put money in the sack, and being in fear of her life the teller put $8,225 in the sack, and the negro turned and walked out the front door. She further testified that appellant was not the negro to whom she gave the money at the bank window.

Wilber Johnson testified that while in the bank about 11:30 A.M. November 12, he was alerted by some unusual occurrences when a negro man approached a teller's window; that he immediately went outside to his car, which had a two-way radio, and waited for the negro to come out of the bank. Immediately, Johnson saw him come out of the bank, carrying a gun and a paper sack, and get into an old black 1948 Chevrolet sedan, which was then driven away by another negro man. Johnson pursued the Chevrolet, and with the aid of his wife,

who was with him, he radioed his position to the police as often as he could. After a short, winding chase, without Johnson losing sight of the Chevrolet, it stopped in the street and Johnson stopped about 100 feet behind it. Johnson saw two negro men get out of the Chevrolet, one of whom was carrying a sack, and both entered a faded 1954 Buick which was driven by another negro man. The Buick was driven away at a rapid speed, with Johnson in pursuit, only momentarily losing sight of the Buick when it would turn a corner while traveling a circuitous route. During the chase Johnson was constantly communicating with the police dispatcher. Johnson pursued the Buick for "four to seven, or eight minutes" until it was stopped by the police. Johnson identified the Buick as the same car he pursued after the two negroes left the Chevrolet and entered the Buick, but he never saw the two men leave the Buick.

The officers identified the appellant as the driver of the Buick which they had stopped immediately after getting into a certain area in response to a radio dispatch. The appellant was alone in the Buick at the time. Johnson arrived at the scene immediately after the officers had stopped the Buick; and, in the presence of the appellant, he related to Officer Lowrance what he had seen at the bank and also told him what occurred afterward, including the identification of the Buick at the scene when appellant was apprehended.

The officers, after receiving additional information, went to the home of Luther Green in Corpus Christi. They arrested both Green and Harry Martin at Green's home. Martin was found under the house with $8,225 in money in a brown paper sack in his possession, and after coming from underneath the house he pointed out to the officers the location of the gun and they took possession of it. Green was arrested inside the house.

Martin testified that he and Green went from Green's house straight to the bank; that he entered the bank, exhibited the

gun, and ordered the teller to put the money in the paper bag, which she did; that he returned to the car, which Green drove to the predesignated place, and appellant "drove up behind us" in a car. Green and Martin, with Martin carrying both the gun and the money, got in appellant's car. As appellant drove away Green saw someone following them and appellant then increased the speed, turned four or five corners, and, after travelling for a period of three or four minutes, appellant let Green and Martin out at Green's house, into which they ran, with Martin still carrying the money and the gun. They counted the money, which totaled $8,225 and put it "back in the same paper bag." They were going to divide the money three ways, but before they had an opportunity to do so, the officers came, but left because the door was locked. When the officers left, Martin, with the money and the gun, crawled underneath the house, where he was discovered by the officers on their return. At this time the officers arrested Green and Martin and took possession of the money and the gun.

The testimony of Green was substantially the same as that of Martin, except he testified to the following additional facts: After Martin left the bank it took the two about six minutes to drive to the previously designated place, where they met the appellant and transferred to the Buick he was driving. In a few minutes appellant let them out at Green's house, and he drove on for the purpose of taking the car away from the house and leaving it at another place. At the time the officers came, Green and Martin knew that appellant had already been arrested because they had heard it on a radio news bulletin.

The appellant did not testify or offer any evidence in his behalf.

Appellant challenges the sufficiency of the evidence to corroborate the testimony of the accomplice witnesses, Martin and Green.

The trial court recognized Martin and Green as being accomplice witnesses.

The testimony reveals that during the execution of the plans, Johnson saw a negro man in the bank and also saw him leaving, carrying a gun and a paper sack, and enter a Chevrolet sedan, which was driven away by a negro man. He pursued the Chevrolet for about six minutes until it stopped in the street, at this time he saw the two men in the Chevrolet get out, with one still carrying the sack, and enter a faded 1954 Buick which another negro man rapidly drove away. In less than eight minutes after the two men entered the Buick, it was stopped by the police who had been alerted as a result of Johnson's use of his radio, and the officers identified the appellant as the driver of the Buick. Johnson identified the Buick stopped by the police as the same Buick he had seen two negroes enter after leaving the Chevrolet. Shortly thereafter, the officers arrested Martin and Green in Green's house, which was in the neighborhood of where they changed from the first to the second get-away car. A gun and a brown paper sack containing $8,225, the exact amount of money taken from the bank, was found at Green's house.

■ The evidence sufficiently corroborates the testimony of the accomplice witnesses. Art. 718, Vernon's Ann.C.C.P. It also warrants the jury in finding that appellant, Green and Martin agreed to rob a bank, that appellant furnished a gun, and was present and knew when Green and Martin left going to the bank; that during the existence of and in furtherance of their common design to rob the bank the appellant waited for their return and was at the previously designated place when they arrived about six minutes after the robbery, and carried them away at a high rate of speed to secure their safety. The evidence is sufficient to support the conviction.

Appellant complains of the failure of the court to charge on circumstantial evidence.

■ Where there is direct evidence against an accused, although it is that of an accomplice, a charge on circumstantial evi-

dence is not required. The testimony of the accomplice witnesses in this case makes a charge on circumstantial evidence unnecessary. Steen v. State, 131 Tex.Cr.R. 532, 100 S.W.2d 109.

It is contended that the trial court erred in failing to charge the jury that they must believe that the testimony of the accomplice witnesses was true beyond a reasonable doubt.

The failure to so charge in submitting the law of accomplice testimony would not be error, if elsewhere in the charge the law of reasonable doubt was properly submitted as to the whole case. Stovall v. State, 104 Tex.Cr.R. 210, 283 S.W. 850.

The charge in the instant case in concluding the submission of the law of accomplice testimony instructed the jury as follows: " * * * and from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense, as charged against him in the indictment."

In Stovall v. State, supra, the charge on the law of accomplice testimony was approved. It was in substance the same as given in this case. Therefore no error is presented.

It is insisted that the trial court erred in failing to charge the jury that if appellant was either an accomplice or an accessory as those offenses are defined, then they could not find him guilty as a principal, or if they had a reasonable doubt thereof to acquit him.

The indictment charged appellant, Martin and Green jointly with robbery, but the appellant was here alone on trial. In the charge, the court properly defined principals, and only authorized a conviction if the jury found beyond a reasonable doubt that the appellant was "acting either alone or jointly as a principal, as the term principal has been defined to you;" and, if they did not so believe to acquit him, or if they had a reasonable doubt as to his guilt to find him not guilty.

The requested charge also authorized his acquittal if they found him not guilty as a principal or, if they had a reasonable doubt thereof to acquit.

The charge as given adequately protected the rights of the appellant. The failure to charge the jury as appellant here contends was not error. Lopez v. State, 170 Tex.Cr.R. 208, 339 S.W.2d 906.

The judgment is affirmed.

Opinion approved by the Court.