**REPUBLIC OF TEXAS SAVINGS AS-SOCIATION and Bankers Capital Corporation, Appellants,**

v.

**ISLAND RECREATIONAL DEVELOP-MENT CORPORATION, et al., Appellees.**

**No. 09–82–083–CV.**

Court of Appeals of Texas, Beaumont.

Oct. 25, 1984.

Rehearing Denied Nov. 15, 1984.

Thomas Walston, Beaumont, for appellants.

Robert E. Barron, Nederland, for appellees.

## OPINION

BROOKSHIRE, Justice.

Island Recreational Development Corporation (hereafter "IRDC") and Sea Cabins, Inc. (hereafter "Sea Cabins") sued Republic of Texas Savings Association (hereafter "Republic") and Bankers Capital Corporation (hereafter "Bankers"). IRDC and Sea Cabins obtained a judgment against Republic and Bankers for $667,882.87 in damages plus $52,500 attorney's fees. The cause of action was based on an alleged breach of contract by Bankers for failure to permanently fund first mortgages in accordance with the terms of a commitment letter. Republic and Bankers appeal from this judgment.

After prolonged bargaining Sea Cabins purchased a commitment letter on June 25, 1980, from Bankers. Bankers contracted to provide the funding of permanent mortgages to qualified buyers of Sea Cabins' condominiums to be built on 14-plus acres on Pleasure Island in Port Arthur, Jefferson County. A $40,000 cash payment was paid by Sea Cabins to Bankers as consideration for the June, 1980, commitment. The commitment letter was to have expired March 15, 1981. On August 27, 1980, an additional $20,000 cash payment was made by Sea Cabins for a second commitment letter. The second commitment letter extended the date of the original commitment letter until September 15, 1981.

The original commitment letter provided that Republic would fund permanent, first mortgages at 13⅜ percent interest. Two million dollars was the maximum commitment funding of the loans. These conventional first mortgage loans were to close at a one percent discount. Individual loans could not exceed $75,000 or 80 percent of the sale price. Security for the loans was to include not only the units but also all fixtures, appliances, equipment and other chattel in each unit. Additionally, each mortgage was to be secured by a pro rata percentage ownership in both limited and general common elements or areas. The common areas included, *inter 'alia,* the swimming pool and decks and the landscaping surrounding the units.

The extension in the second commitment letter was based on two conditions: (1) the interest rate was to be increased to 13⅞ percent and (2) one additional point or $20,000 was to be paid for this extension. Both commitment letters were drawn and signed by Dale Dillingham, Executive Vice-President of Bankers. Each of the letters was accepted and agreed to by Michael J. Ryan, President of Sea Cabins.

On September 14, 1981, Ryan wrote to inform Republic that the first thirty-six units (Phase One) of Sea Cabins' condominiums were complete. He stated that the provisions of the commitment contract were met and demanded that Republic honor its mortgage commitment. Further he stated that all proposed purchasers were qualified buyers.

On September 22, 1981, Richard S. Waring, Senior Vice-President of Republic, responded:

"... The terms and conditions upon which the commitment was issued have not been satisfied and therefore Republic has no obligation to process or fund loans pursuant to the commitment.

"[T]he improvements must be 'fully and finally' completed prior to funding and that 'all improvements to Common Areas in each respective phase must be completed prior to the first closing and funding of an individual unit'. An independent inspection of the improvements by Republic on September 15, 1981 confirmed that these requirements were not satisfied. All the units were not complete and the pool and other amenities were unfinished.

"Paragraph 17 requires that loan applications were to have been received at least 30 days prior to September 15, 1981. This requirement was not met."

It was from this refusal to honor the commitment letter that the cause of action arose.

Appellants raise six points of error on appeal. Appellants' first point of error is that the motion for judgment notwithstanding the verdict of the jury should have been granted because the record contains no evidence that IRDC performed all conditions precedent to Republic's performance under the commitment letter. Appellants argue that there is absolutely no evidence that IRDC fulfilled the conditions precedent found in the commitment letter, which required (i) IRDC's full and final completion of the 72-unit Sea Cabins Project; (ii) no assignment of the commitment letter by IRDC without Republic's prior written consent; and (iii) IRDC's timely filing of loan applications.

### Sea Cabins Project

Appellants contend that the provisions in the original letter and the extension letter are conditions precedent, demanding strict compliance by Appellees. Appellees characterize them as covenants satisfied by substantial completion or compliance. Appellants argue that a commitment to lend money or fund permanent mortgages upon the occurrence of certain conditions is an option contract. Hence, the loan commitment fee of $60,000 was consideration paid for the privilege of subsequently requiring funding of the mortgages only when the conditions were fully and finally completed by the due date.

The letter of commitment speaks of "terms and conditions". Appellees contend that they fully complied with all terms and conditions except those waived by Appellants. Trial testimony shows that Appellees made Herculean efforts to complete the construction prior to September 15, 1981. Appellees also showed that they worked with a title company finalizing 35 or 36 mortgages to buyers by September 24, 1981. Appellees further showed that all permanent loans were closed out on the same terms and conditions as provided for in the commitment letters except that Appellees were required to become the lender because of Republic's refusal to fund the mortgages. The interest on the notes secured by the first mortgages was 13⅞ per-cent but IRDC, as a borrower, had to refinance the loans at 1 percent above prime, which was 19 or 20 percent on September 15, 1981. Appellees contended that the difference between 13⅞ percent and 20 or 21 percent amounted to more than $40,000.

The original commitment letter reads, in part:

"12. *Construction Completion*

"The improvements upon which our individual mortgages will be based must be fully and finally completed prior to funding and a completion certificate issued by the appraiser to us certifying to that fact.

"Furthermore, all improvements to Common Areas in each respective phase must be completed *prior to the first closing and funding* of an individual unit within that phase. [Emphasis added] [hereafter cited as Paragraph Twelve]

"13. *Condominium Declaration and Homeowners Association By-Laws*

"As a requirement to this commitment, a copy of the Condominium Declaration and the By-Laws of the Homeowners Association must be furnished to this Association for review *prior to the first closing and funding*. Additionally, a breakdown of the monthly maintenance fund assessments must be provided to Bankers Capital Corporation along with a copy of the recorded master survey for all phases of the condominiums." [Emphasis added] [hereafter cited as Paragraph Thirteen]

Paragraphs Twelve and Thirteen indicate that these loans were to be closed at the completion time of the respective phases of construction which would compellingly imply that there would be at least a second closing and funding. Therefore, the contention of Bankers that the entire seventy-two units had to be completed prior to September 15, 1981, is not harmonious with the original letter of commitment or the amended letter of commitment. In other words, if it had been the intention of the parties that the seventy-two units had to be

fully and finally completed prior to September 15, 1981, then it does not seem reasonable to have language that reads, "all improvements to Common Areas in each respective phase" must be fully and finally completed and that the Condominium Declaration would be subject to "review prior to the first closing and funding."

■ Appellants' first contention raises the question of whether there existed a scintilla of evidence upon which the jury could have made its findings. A correct granting of a judgment notwithstanding the verdict requires a determination that there is no evidence upon which the jury could have made the findings relied upon. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726 (Tex.1982); *Hendrix v. Jones-Lake Constr. Co.*, 570 S.W.2d 546 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.). All evidence must be reviewed and analyzed in a light most favorable to support the jury's findings, and every reasonable intendment deducible from the evidence is to be indulged in favor of the verdict. *Elliott v. Elliott*, 597 S.W.2d 795, 800 (Tex.Civ.App.—Corpus Christi 1980, no writ). *TEX.R.CIV.P. 301.*

In *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967), the Supreme Court of Texas wrote:

"... That rule [*TEX.R.CIV.P. 301*] provides that upon motion and notice given, judgment may be entered notwithstanding the verdict or upon disregarding one or more special findings. A judgment notwithstanding the verdict is authorized under Rule 301 only when a directed verdict would have been proper; and special issue findings may be disregarded which are immaterial or have no support in the evidence...."

From *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962), we find:

"To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict it must be determined that there is no evidence on which the jury could have made the findings relied upon. In acting upon such motion all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor."

We find that the no evidence point is not sustainable insofar as the thirty-six condominium units are concerned. There is testimony that at least 99 percent of the work on these units was completed as well as on the common areas. We hold that even if the work was 1 percent incomplete, then the doctrine of de minimis non curat lex would apply. Though there was evidence that the completion punchlist in some instances was rather long, there was also evidence that a crew followed behind the inspectors to take care of the requirements of the punchlist fully and completely by the late hours of September 15, 1981. There was testimony from the pool constructor that the pool was completed. The testimony as to the landscaping in the common areas was unsatisfactory but this amenity is considered to be de minimis non curat lex.

■ By its language, Appellants argue, the terms in the letters of commitment are conditions precedent. By definition a condition precedent is an event that must be performed before a right can accrue to enforce an obligation. *Bair v. Voelker Realty Co., Inc.*, 589 S.W.2d 867, 869 (Tex. Civ.App.—Dallas 1979, no writ).

The Supreme Court in *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1 (Tex.1976), held that conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. We find further in *Hohenberg Bros. Co.*, *supra* at 3:

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to liability under them...."

While no particular words are necessary for the existence of a condition, such terms as 'if', 'provided that', 'on condition that', or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties. . . .

"However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition. . . . This Court has on numerous occasions discussed the nature of conditions and covenants and as a general rule has noted that, 'Because of their harshness in operation, conditions are not favorites of the law.' . . . The rule, as announced in *Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436, 216 S.W.2d 566 (1949), is that:

" 'Since forfeitures are not favored, courts are inclined to construe the provisions in a contract as covenants rather than as conditions. If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed.' "
[Citations omitted]

We find that Paragraph Twelve, which required that the individual mortgages be based on fully and finally completed units coupled with a completion certificate, was satisfied; and, furthermore, that all improvements to the common areas in each respective phase were completed by midnight, September 15, 1981. We hold that the concept of fully and finally completing the thirty-six units by midnight, September 15, 1981, rather than the seventy-two units, is the proper construction of this commitment agreement.

Assignment of Commitment Letter

Appellants argue that IRDC's failure to perform the conditions precedent dis-charged Republic's obligation to honor the commitment letter. The original commitment letter, in part, reads:

"15.  *Transfer of Commitment*

"This commitment is non-transferrable [sic] or assignable to any other individual, corporation or entity unless specifically approved in writing by Bankers Capital Corporation." [hereafter cited as Paragraph Fifteen]

Contrary to the terms of Paragraph Fifteen, IRDC executed a written assignment of the commitment letter without Republic's prior consent. IRDC's assignment was introduced deep in the course of the trial. The assignment was never discovered by Appellants during pretrial discovery.

The assignment was contained within a Building Loan Agreement between Appellees and Allied Merchants Bank [hereafter "Allied"] dated November 18, 1980. The agreement outlines various terms and conditions of the interim construction loan obtained by Sea Cabins. The assignment, in part, reads:

"Borrower [IRDC] hereby assigns to lender [Allied] (i) all of the right, title and interest of Borrower to and under the Commitments of the Long-Term Lenders described in Exhibit 'B,' and (ii) the Agreement between Borrower and the General Contractor which is described in Exhibit 'B.' Borrower represents that the Agreement between Borrower and the General Contractor is in full force and effect and has not been previously assigned by Borrower, and has not been modified or amended, except as set forth in Exhibit 'B.' Borrower will assign to Lender such other contracts and agreements relating to the construction and completion of the Improvement as Lender may from time to time request."

The attorney for Republic and Bankers vigorously objected to the introduction of the assignment to Allied by Appellees stating that he had never seen the document before and had been given no opportunity to review the document. The court ruled that counsel would be given ample time to review the document and then recessed tri-

al for several hours. During the recess, Appellees drew up a reassignment agreement between themselves and Allied. After the recess, both documents were admitted into evidence.

At trial, Appellees argued that the assignment clause in the building and loan agreement was merely a collateral assignment to protect Allied in case IRDC defaulted on the loan agreement. Thus, Allied would still be able to obtain the permanent funding that was to be forthcoming on September 15, 1981.

At trial Appellants took the position that "this whole thing is mute [sic]. It is a collateral assignment in any event." However, on appeal, Appellants take a totally opposite approach and say that the assignment is a breach of an absolute condition which justifies Republic's prior refusal to permanently fund the first mortgages. In *Anderson v. Anderson,* 620 S.W.2d 815, 819 (Tex.Civ.App.—Tyler 1981, no writ), we find:

"It is a fundamental principle that no person may maintain an action in court unless he shows that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. *City of Waco v. Akard,* 252 S.W.2d 496, 499 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.); *Hollar v. Jowers,* 310 S.W.2d 721, 724 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.)...."

It is clear that at the time of the actual filing of this litigation neither IRDC nor Sea Cabins possessed any justiciable interest in the commitment letters.

█ A fundamental rule of law expressed in *Housing Authority of the City of Harlingen v. State ex rel. Velasquez,* 539 S.W.2d 911 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), states that without a breach of a legal right belonging to the plaintiff, no cause of action arises or can accrue to plaintiffs' benefit. The Fifth Circuit has also opined in this area as found in *Hallman v. Safeway Stores, Inc.,* 368 F.2d 400, 403 (5th Cir.1966): "It is established Texas law that an assignee

may maintain any action in his own name, which the assignor may have brought, and unless the assignor has retained some interest therein, he, the assignor, is precluded from bringing suit." Accordingly, this has left IRDC and Sea Cabins without a legal right to sue on the commitment letter. We find that Paragraph Fifteen, which clearly prohibits assignment or reassignment to the bank, without prior consent, was breached.

### Loan Applications

Appellants argue that the failure of IRDC to perform the condition precedent contained in the seventeenth paragraph of the original commitment letters excuses Republic from performance. It reads:

"17. *Commitment Term*

"This commitment shall remain in effect until March 15, 1981. Applications for loans must be received at least 30 days prior to this date and closings and fundings of the loans must be completed prior to March 15, 1981." [hereafter cited as Paragraph Seventeen]

Appellees argue that there is clear authority and supporting evidence that indicate that the provisions of Paragraph Seventeen, even if considered conditional, were waived through the actions of Republic's employee.

The agreed bargain was that the permanent funder would have thirty full days to investigate and study the applications of each qualified buyer. We find in the record that Ryan filed the majority of the applications sometime during *the week after August 15, 1981.* Some applications were delivered in September, 1981. To meet the thirty days prior to due date provisions, Ryan needed to have filed the applications before August 15, 1981. Testimony shows Ryan was in daily contact with a clerical employee of Republic regarding the applications. The employee's testimony was straightforward and uncontradicted. Republic's employee stated unequivocally that she told Ryan the loan applications could not possibly be completed on

time by the September 15, 1981, deadline but agreed to continue processing them in a good faith effort to comply with Ryan's request. The evidence shows Appellants were not given the thirty days necessary to process and verify the information contained in the applications.

Trial testimony from Dillingham showed that Republic had considered selling the security instruments and promissory notes obtained from IRDC in a secondary mortgage market. Dillingham testified that this transfer was in the ordinary course of the banking business. Appellants argue that Paragraph Seventeen should be analyzed in conjunction with the secondary mortgage market as supportive of its position that the provision was a condition precedent. Part of the consideration in issuing the commitment letters was to provide fixed conditions precedent to insure that Republic would have the opportunity to exercise its election to transfer and assign the security instruments and the promissory notes in a secondary mortgage market.

We do not believe that Republic's employee's spirit of helpfulness waived the requirements of Paragraph Seventeen. She testified that she was required by federal law to receive all such applications. Further, she was not an executive officer of Republic. We find no evidence of waiver by Republic of Paragraph Seventeen. Furthermore, the equitable basis of the "substantial performance rule" as applied to the construction contracts has no logical relationship to the late delivery of the loan applications as Appellees argue.

We hold under this record that Paragraphs Twelve and Thirteen are not conditions precedent. Hence, substantial completion or compliance is satisfactory.

We hold that Paragraphs Fifteen and Seventeen must be complied with strictly and we hold that these paragraphs constitute conditions precedent. Therefore, we sustain Appellants' first point as to the total assignment of the commitment letters to Allied and as to the lateness in filing the applications for permanent loans

and supporting documents. To that extent, the motion for judgment notwithstanding the verdict should have been granted. This holding is dispositive of this appeal. For reasons stated we do not reach Appellants' remaining points of error.

We admire Appellees good faith effort to satisfy the requirements of the commitment letters, nevertheless, we are constrained to reverse the trial judgment and render it so that Appellees take nothing from Appellants.

REVERSED AND RENDERED.