IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-339-CR





GREGORY KIRK CAVANAUGH,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 93-931, HONORABLE TOM BLACKWELL, JUDGE



 





PER CURIAM

 A jury found appellant guilty of the offense of injury to a child. 1981 Tex. Gen.
Laws, ch. 604, § 1 at 2397 (Tex. Penal Code Ann. § 22.04(a)(1), since amended). (1) The court
assessed punishment at forty years' imprisonment. 

 In his first point of error, appellant argues there is insufficient evidence to show
that he caused serious bodily injury to the victim. In reviewing the sufficiency of the evidence
to sustain the conviction, the standard of review on appeal is the same for both direct and
circumstantial-evidence cases. The critical inquiry is whether, after reviewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19
(1979); McGoldrick v. State,, 682 S.W.2d 573, 577 (Tex. Crim. App. 1985). In circumstantial-evidence cases, we must also determine whether the evidence viewed in the light most favorable
to the verdict excludes every reasonable hypothesis except the defendant's guilt. Carlsen v. State,
654 S.W.2d 444, 447 (Tex. Crim. App. 1983). (2) All evidence presented, whether properly or
improperly admitted, is considered. Id. Questions regarding the sufficiency of the evidence must
be resolved in light of the charge which is given. Polk v. State, 749 S.W.2d 813, 815 (Tex.
Crim. App. 1988).

 The charge recites, in pertinent part:

 


 Now, if you find from the evidence beyond a reasonable doubt, that on or about
the 20th day of July, 1988, in Travis County, Texas, the defendant, Gregory Kirk
Cavanaugh, did then and there intentionally or knowingly engage in conduct that
caused serious bodily injury to Anthony Nelson White, a child younger than 14
years of age by causing an object unknown to the Grand Jury to impact with the
head of the said Anthony Nelson White you will find the defendant guilty of the
offense of injury to a child, but if you do not so believe, or if you have a
reasonable doubt thereof, you will acquit the defendant and say by your verdict
"Not Guilty."


I. BACKGROUND


 Appellant brought Cora Nelson's two and one-half year old son, Anthony Nelson
White to the Brackenridge hospital emergency room at approximately 10:00 p.m. on July 20,
1988. Cora arrived shortly thereafter. (3) Anthony was in respiratory arrest and near death. Dr.
Eric Levy, a board-certified pediatrician, was the emergency room resident on call the evening
Anthony was brought to the emergency room. Dr. Levy provided the initial emergency treatment
to Anthony. From observing Anthony's physical condition, Dr. Levy determined that the child
had a life-threatening brain injury. The doctor also observed two abrasions on Anthony's
forehead and a circular burn scar, consistent with a cigarette burn, on his abdomen. After
stabilizing the child, Dr. Levy ordered a CAT scan of Anthony's head to determine if surgery was
required. Dr. Levy then went to obtain a history from appellant and Cora to determine how
Anthony had been injured.

 Dr. Levy testified that appellant told him that at 9:00 p.m. that evening he had been
walking up some stairs with Anthony when Anthony lost his balance and fell backwards onto the
concrete stairs. Appellant picked Anthony up and observed that the child was "woozy." 
Appellant took Anthony back to Cora's apartment. Anthony got sleepy, became unresponsive,
and was brought to the emergency room. Dr. Levy testified that, after listening to appellant's
explanation of what happened, he became suspicious that Anthony had been the victim of child
abuse. 

 In addition to statements appellant made to treating physicians, he also provided
two written statements to Austin police and testified at trial. We will summarize relevant portions
of appellant's statements and testimony. According to appellant, Anthony had sustained two falls
prior to admission to the Brackenridge emergency room on July 20. The first fall occurred on
July 17, 1988. Appellant and Anthony were walking down a flight of five or six stairs at the
apartment complex where they lived when Anthony fell forward. Appellant stated that Anthony's
head hit a brick wall. Anthony sustained two abrasions to his forehead as a result of this fall. (4) 
Appellant treated the scrapes with peroxide and an ice pack. 

 The second fall occurred on the evening of July 20, 1988. Between 9:00 and 10:00
p.m., appellant and Anthony were returning to their apartment from Henry Hughes' apartment (5),
where Anthony earlier had spent part of the day. Prior to starting up a flight of stairs, while,
"playing" with Anthony, appellant picked him up and shook him hard. Appellant stated Anthony
laughed when shaken. He put the child down and they walked up the flight of stairs. Then,
Anthony fell backward down the stairs. Appellant picked Anthony up. Anthony's body shook
a few times and his eyes rolled back into his head. Appellant rushed the child to his apartment
and into the bathroom, where he sprayed water on the boy's face in an attempt to revive him. 
Appellant noticed that Anthony's lips had turned blue. He began mouth-to-mouth resuscitation
and he and Cora rushed to get a ride to the hospital. 


II. EVIDENCE FAVORABLE TO THE PROSECUTION



 Dr. Levy testified that appellant's version of events was completely inconsistent
with his physical findings. Dr. Levy stated that the time frame was consistent with the degree and
severity of Anthony's injury, that is, that Anthony had been injured at approximately 9:00 p.m.
and brought into the emergency room at approximately 10:00 p.m. But the mechanism of injury
was completely inconsistent with the extent of the injury. In Dr. Levy's medical opinion,
Anthony suffered a very forceful and traumatic blow or injury to the head, at or about 9:00 p.m.
on the date of his admission to the emergency room. Dr. Levy based his opinion on the history
appellant provided, his physical examination of the child and the child's condition on admission. 
Dr. Levy testified it would take extreme, violent, sudden force to cause Anthony's brain injury. 
It was Dr. Levy's opinion that falling downstairs could not have caused Anthony's injury. 
Dr. Levy further stated that in child abuse cases all of the aspects surrounding the injury are
accurate except for how it occurred. Dr. Levy testified that the highest probability was that the
injury occurred within two hours of admission. The lowest probability was that the injury
occurred eight to twelve hours earlier. 

 Dr. Levy also testified that he did not believe the injury was caused by multiple
falls whose additive effect finally resulted in the brain injury. Nor did Dr. Levy believe that
Anthony's injury was due to "shaken-baby syndrome," a phenomena in which an infant is shaken
abruptly and violently, causing severe head trauma. (6)

 Dr. Armando Correa is the chief pediatric resident of Children's Hospital at
Brackenridge. Dr. Correa cared for Anthony after he was discharged from intensive care and
continued to be Anthony's pediatrician, through the East Austin Clinic. Dr. Correa testified that
he was present at the emergency room when Anthony was brought in. Dr. Correa asked appellant
what happened to Anthony. Dr. Correa testified that appellant told him that Anthony was walking
up a set of stairs and became limp, collapsed, and a few minutes later stopped breathing, so
appellant gave him mouth-to-mouth resuscitation and rushed him to the hospital.

 Dr. Correa testified that Anthony's brain lesion could have been caused only by
a severe blow to the head and that it would have had to be more forceful than a fall. Dr. Correa
also testified that he believed he was dealing with child abuse because the history appellant
provided was not consistent with the extent of the injuries and because appellant changed the
explanation several times.

 Dr. Correa stated that while it was possible that Anthony suffered the injury twelve
hours before being brought to the hospital, it was unlikely. Dr. Correa testified that, based on
the extent of the injuries, it was more likely that Anthony was injured within one hour of being
brought to the hospital. Dr. Correa also testified very little possibility exists that Anthony's injury
was due to shaken-baby syndrome. Dr. Correa further testified that the injury was not the result
of an accumulation of small falls and bumps on the head that finally culminated in the brain injury
Anthony sustained.

 Dr. Linda Norton is a forensic pathologist, a subspecialty in the general field of
pathology that deals with the effects of trauma on the human body. She has investigated between
500 and 1000 child-abuse cases. Dr. Norton reviewed Anthony's medical records, the statements
made by appellant and Cora, and photographs of Anthony taken at the time he was admitted to
Brackenridge. Dr. Norton testified that the brain injury Anthony suffered is characteristically
seen when a moving head is thrown against a stationary object. This type of injury is associated
with a great deal of force. She testified that only three types of injuries exist when enough force
can be generated in order to create a life-threatening head injury to a child:  (1) automobile
accidents when the child is ejected from the motor vehicle; (2) falls from great heights, such as
from two-stories onto cement; and (3) child abuse episodes when the child is thrown, slammed,
backhanded, or kicked so as to propel the child through the air, causing the head to hit a hard flat
surface with enough force to cause the brain to be injured inside the skull. She also stated there
would not necessarily be evidence of external bruising if the blow were to the back, side or top
of the head. 

 Dr. Norton stated that injury to the brain is the key to how much force was used
to inflict the trauma. Dr. Norton testified that normal falls which children sustain everyday do
not cause any injury to the brain. The doctor also testified that it was virtually impossible for
Anthony to have suffered his brain injury from falling downstairs. Also, it was extremely
unlikely that the injury was the result of shaking. Dr. Norton testified that she could say with a
reasonable medical certainty that Anthony's injury occurred within an hour of his being brought
to Brackenridge hospital.

 It was Dr. Norton's medical opinion that shortly before Anthony was brought to
the hospital, his head was thrown with great force into a hard flat surface by an unknown method. 
She further testified that the individual responsible for inflicting the injury had to be an adult large
enough to throw or slam Anthony. Dr. Norton testified that based on statements made by
appellant and Cora, and on the medical records, both injury episodes occurred when Anthony was
alone with appellant. Dr. Norton's opinion is that the blow which caused Anthony's brain injury
was deliberately inflicted in an assaultive fashion and that appellant was responsible for the injury. 


 She believed this was a child abuse case, in part, because the stories given by
appellant as to how the injury was caused are typical of stories that are given by child abusers. 
She testified that abusers always attribute the cause of the trauma to "a fall or some sort of minor
accident that results in brain injury that we associate with automobile accidents." She further
testified that "invariably, what happens is, the individual who was alone with the child when the
injury occurs will give some story about how the injury was an accident."


III. OTHER EXPERT TESTIMONY



 Dr. Young P. Oliver is a neurologist. He was called by the defense. He treated
Anthony for seizures on July 25, 1988. It was Dr. Oliver's opinion that Anthony's injury most
likely occurred within six hours of admission to the hospital, but could have occurred as long as
twenty-four hours before admission.



IV. DISCUSSION


 Appellant argues that because it was possible that Anthony's injury could have been
inflicted up to twenty-four hours prior to his collapse, and appellant did not have exclusive or
continuous access to him during that interval, the evidence supports a reasonable hypothesis other
than appellant's guilt. 

 The State need not prove to a moral certainty that the circumstances presented
exclude every hypothesis that another person may have committed the offense. It must only
exclude every reasonable hypothesis raised by the evidence that tends to exculpate the defendant. 
If the combined and cumulative force of all the incriminating circumstances warrant a conclusion
of guilt, the evidence is sufficient. Not every fact need point directly and independently to the
defendant's guilt. Brandley v. State, 691 S.W.2d 699, 703 (Tex. Crim. App. 1985). 
Furthermore, the jurors are the exclusive judges of the facts, the credibility of the witnesses, and
the weight to be given their testimony. Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Cr. App.
1974). The jury is free to reject any and all of the evidence presented at trial. Russeau v. State,
785 S.W.2d 387, 391 (Tex. Cr. App. 1990).

 The jury had the opportunity to observe and listen to the testimony of Hughes and
Cora, both of whom had access to Anthony during the twenty-four hours preceding his admission
to Brackenridge. Neither testified to observing Anthony fall or receive a blow to the head, nor
did they observe signs that Anthony was injured prior to his purported fall down the stairs. Three
experts testified that based on all the information they had available to them, it was most likely
Anthony was injured within one to two hours of his admission to the hospital. While the experts
conceded the possibility that the injury could have occurred eight to twenty-four hours earlier, all
testified that the longer time-frame constituted the least likely time during which the injury could
have occurred. The history provided by appellant does not indicate that the child suffered any
other blow during the prior twenty-four hours. Furthermore, Dr. Norton testified that if the
injury had occurred earlier in the day, there would have been a gradual deterioration of Anthony's
neurologic status accompanied by bleeding which would have been picked up by the initial CAT
scan. The initial CAT scan did not reveal evidence of bleeding. There was no testimony
revealing gradual deterioration of Anthony's neurologic status. Immediately prior to this fall,
Anthony appeared fine. Hughes, who babysat Anthony that afternoon and from whose apartment
appellant and Anthony had departed just moments before Anthony's fall, testified that Anthony
"seemed like Anthony, to me." Appellant testified the child had laughed when playfully shaken
just prior to his fall. Based on this evidence, the jury was free to conclude that Anthony was
injured in the hour immediately preceeding his admission to Brackenridge hospital while he was
in the exclusive possession of appellant, and that, therefore, neither Cora nor Henry harmed
Anthony.

 In light of the expert testimony that Anthony's brain injury could not have been
caused by a fall, the jury reasonably could have disbelieved appellant's story that Anthony's
sudden and acute onset of life-threatening symptoms of brain injury followed a fall down the
apartment steps. The jury was free to believe the expert testimony that an abuser typically
attributes a child's serious injury to an accident incapable of inflicting the degree of injury that
results; that appellant was Anthony's abuser; and that he was lying about the cause of Anthony's
injury. The jury was also free to believe Dr. Norton's opinion that appellant, as the person who
was alone with Anthony when both injury episodes occurred, was the person who inflicted the
blow resulting in Anthony's brain injury and that the blow was deliberate, assaultive, and violent. 
We believe the evidence is sufficient to support the jury's implied finding that it was appellant
who caused Anthony's brain injury. The evidence excludes every reasonable hypothesis other
than appellant's guilt. Appellant's first point of error is overruled.

 In his second point of error, appellant argues there is insufficient evidence to show
that he, or anyone else, struck the victim's head with an object, as alleged in the indictment. The
indictment alleged that appellant did "engage in conduct that caused serious bodily injury to
Anthony Nelson White . . . by causing an object . . . to impact with the head of the said Anthony
Nelson White." Appellant argues that the clear import of these words is that appellant hit
Anthony in the head with some sort of object. Appellant asserts that the expert testimony is that
Anthony's injury was caused by an adult having thrown or slammed the child's head into a hard
flat surface. Appellant alleges the State did not prove the indictment because the evidence does
not support the wording in the indictment. 

 There is not a fatal variance between the indictment and proof regarding the manner
and means by which the offense was committed. Appellant's interpretation of the import of the
words used in the indictment is but one possible interpretation. One may cause an object to
impact with a head by striking the head with the object or by throwing or slamming the head into
contact with the object. The State's evidence is sufficient to sustain an implied finding by the jury
that the latter means caused the injury. Furthermore, there is also evidence to support the
conviction under appellant's narrow reading of the indictment. Dr. Levy testified that "Anthony
Nelson suffered a very forceful and traumatic either blow or injury to the head." Dr. Correa
testified that "the type of lesion that he [Anthony] had had to come from a severe blow to the
head." Appellant's second point of error is overruled.

 The judgment of the trial court is affirmed.



[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed:  December 11, 1991

[Do Not Publish]
1. The jury found appellant guilty of injury to a child "as alleged in the indictment." The
indictment alleges the appellant engaged in the offending conduct intentionally and knowingly,
making the offense a first degree felony. 1981 Tex. Gen. Laws, ch. 202, § 4 at 472 and 1981
Tex. Gen. Laws, ch. 604, § 1 at 2397 (Tex. Penal Code Ann. § 22.04(b), since amended).
2.   This holding in Carlsen was prospectively overruled in Geesa v. State, No. 290-90 (Tex.
Crim. App., Nov. 6, 1991). Carlsen continues to apply to cases tried before November 6, 1991.
3. Appellant lived with Cora and her son at the time of this incident. Appellant and Cora have
since married, and Cora's last name is now Cavanaugh. 
4. These were the abrasions that Dr. Levy observed the night of the 20th.
5. Hughes is appellant's cousin. Both apartments are in the same complex.
6. Dr. Levy testified that shaken-baby syndrome generally occurs with infants who are six to
nine months old and have not developed good head control. Levy considered Anthony's head
control sufficiently developed to make it unlikely that such shaking had caused his injury.